IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| *In re MedStar ERISA Litigation* | Master Case and File No:<br>1:20-cv-01984-DLB<br><br>Judge Deborah L. Boardman |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE OPINIONS AND TESTIMONY OF MICHAEL GEIST**

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... ii

I.  INTRODUCTION ................................................................................................ 1

II. THE GEIST REPORTS ........................................................................................ 3

    A.  The Initial Report ...................................................................................... 3

    B.  The Expert Report Of Michael Geist In Reply To Responsive Report Of Steven K. Gissiner ......................................................................................... 5

III. ARGUMENT ........................................................................................................ 5

    A.  Standard Of Review .................................................................................. 5

    B.  Mr. Geist's Methodology Is Reliable ........................................................ 7

    C.  Mr. Geist's Methodology Is Consistent With His Principles .................... 9

IV. CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brodsky v. KaVo Dental Techs., LLC*,
  2017 WL 6388611 (D. Md. Dec. 14, 2017) ............................................................................ 8-9

*Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,
  259 F.3d 1036 (9th Cir. 2001) ..................................................................................................... 8

*Confederated Tribes of Warm Springs Reservation of Ore. v. United States*,
  248 F.3d 1365 (Fed. Cir. 2001) ................................................................................................. 11

*Cooper v. Smith & Nephew, Inc.*,
  259 F.3d 194 (4th Cir. 2001) ....................................................................................................... 6

*Daubert Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ........................................................................................................... passim

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985) .................................................................................................... 11

*Garthwait v.Eversource Energy Co.*,
  2022 WL 3019633 (D. Conn. July 29, 2022) .................................................................... passim

*Herndon v. Huntington Ingalls Indus., Inc.*,
  2020 WL 5809965 (E.D. Va. Aug. 28, 2020) ............................................................................. 6

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .......................................................................................................... 1, 6, 7

*Payne Inc. v. Bore Express, Inc.*,
  2022 WL 2315738 (D. Md. June 28, 2022) ....................................................................... passim

*Pledger v. Reliance Tr. Co.*,
  2019 WL 4439606 (N.D. Ga. Feb. 25, 2019) ................................................................... 2, 9, 10

*Ramos v. Banner Health*,
  461 F. Supp. 3d 1067 (D. Colo. 2020) ............................................................................. 3, 8, 11

*Stolting v. Jolly Roger Amusement Park, Inc.*,
  37 F. App'x 80 (4th Cir. 2002) ................................................................................................... 8

*Troudt v. Oracle Corp.*,
  369 F. Supp. 3d 1134 (D. Colo. 2019) .................................................................................. 2, 9

*United States v. Brown*,
   415 F.3d 1257 (11th Cir. 2005) ............................................................................................... 6

*United States v. Moreland*,
   437 F.3d 424 (4th Cir. 2006) ................................................................................................... 6

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ................................................................................................... 6

**Rules**

Federal Rule of Evidence 702 ................................................................................................ 5, 6, 7

I.      **INTRODUCTION**

"Ironically, though intended to lower the threshold for the admissibility of expert testimony, [*Daubert Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] has become a talisman for those seeking exclusion of expert testimony of all types by attempting to '*Daubertize*' experts through rigid application of the Supreme Court's enunciated factors." *Payne Inc. v. Bore Express, Inc.*, No. CV 1:21-00048-JMC, 2022 WL 2315738, at *1 (D. Md. June 28, 2022). The arguments set forth in Defendants'[1] Memorandum of Law ("Memorandum") in support of their Motion to Exclude the Opinions and Testimony of Michael Geist (ECF No. 66, "Motion") attempts the "rigid application" of *Daubert* rejected in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The Supreme Court has clarified, however, that "*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test,'" and the "gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'" *Kumho*, 526 U.S. at 150. "Such guidance implicitly recognizes that some types of expert testimony are more suited to existing frameworks of scientific rigor than others." *Payne Inc.*, 2022 WL 2315738, at *1. "For example, determining whether a particular ignition source could generate the requisite heat to ignite a particular combustible is easily assessed based on known standards in physics, chemistry and materials science." *Id.* "By contrast, whether a painting is a forgery may be more reliant on the experience of the expert and 'softer' criteria, such as comparisons to other works or other methods recognized in the discipline." *Id.*

---

[1] "Defendants" refers collectively to the defendants in this action, MedStar Health, Inc., the Board of Directors of MedStar Health, Inc., and the MedStar Health, Inc. Retirement Savings Plan Committee. "Plaintiff" refers to the plaintiff in this action, Elsa Reed." "Plan" refers to the MedStar Health, Inc. Retirement Savings Plan.

As Mr. Geist explained in his Expert Report of Michael Geist dated February 11, 2022 ("Initial Report"),[2] the only way to precisely determine a retirement plan's reasonable recordkeeping and administrative ("RK&A") fee is through a formal bid-solicitation process, which can only be conducted by the Plan's fiduciaries or authorized representatives at the pertinent time.  Unfortunately, since Defendants failed to conduct a formal bid-solicitation process for the Plan during the relevant period and Mr. Geist cannot travel back in time and obtain Defendants' authority to perform that task, he must employ an alternative method to estimate the Plan's reasonable RK&A fees during the relevant period.  Calculating that estimate is an experience-based endeavor, which Mr. Geist ties to several objective factors, including the relevant plan services, the market and industry practices, and the RK&A fee and discount the Plan obtained after the Plan received competitive RK&A bids in 2020.

Defendants do not challenge Mr. Geist's experience, qualifications, or credentials as an expert on the retirement plan RK&A industry -- nor could they, given Mr. Geist's years of experience pricing and negotiating plan RK&A services on behalf of service providers and plan fiduciaries, and relevant consulting work.  But Defendants still argue that his methodology is unreliable and contradicts his position that reasonable RK&A fees can only be determined through a formal competitive process, citing the assessments in *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 WL 4439606 (N.D. Ga. Feb. 25, 2019), and *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134 (D. Colo. 2019).

As discussed below, there are at least two problems with Defendants' arguments.  First, *Pledger* and *Troudt* analyzed methodologies distinct from the methodology Mr. Geist applies

---

[2] The Initial Report is attached as Exhibit "A" to the Transmittal Declaration of Michael S. Hines in support of Defendants' Motion.

here. Unlike in *Pledger* and *Troudt*, Mr. Geist, as explained above, uses, among other things, the RK&A fee and discount the Plan obtained after the Plan received competitive RK&A bids in 2020 as his baseline. Indeed, the court in *Garthwait v. Eversource Energy Co.* held just last month that a similar methodology employed by Mr. Geist was sufficiently reliable under *Daubert* and the Federal Rules of Evidence. *See* No. 3:20-CV-00902 (JCH), 2022 WL 3019633, at *15-*17 (D. Conn. July 29, 2022).

Second, also as referenced above, Mr. Geist cannot travel back in time to implement a formal competitive bidding process during the relevant period where Defendants failed to conduct one, which the *Garthwait* court also recognized. Moreover, courts recognize that, "[w]hen precise calculations are impractical, trial courts are permitted significant leeway in calculating a reasonable approximation of the damages suffered." *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1125-26 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) ("When precise calculations are impractical, trial courts are permitted significant leeway in calculating a reasonable approximation of the damages suffered") (citation omitted). Thus, Mr. Geist's alternative approach is still an acceptable means of estimating the losses caused by Defendants' failure to seek out competitive bids on the Plan's behalf during the relevant period.

Accordingly, Defendants provide no legitimate basis to exclude the Initial Report or any other aspects of Mr. Geist's testimony, and the Motion should be denied in its entirety.

## II.     THE GEIST REPORTS

### A.     The Initial Report

Mr. Geist is an expert on, among other things, "standard customs and practices utilized by plan fiduciaries to obtain reasonable retirement plan service fees, revenue sharing, retirement plan pricing structures, recordkeeping fees, and recordkeeping fee equalization solutions," with a

long history in and various certifications relevant to the retirement plan industry. Initial Report, ¶¶ 6-19. Plaintiff retained Mr. Geist to apply his "knowledge and expertise related to the engagement and reasonable compensation of recordkeepers and administrative services providers and the standard of care, skill, prudence, and diligence for fiduciaries" with respect to the Plan's RK&A services and expenses during the Class Period (July 6, 2014 to the present), "for the limited purpose of calculating losses suffered by the Plan and its participants" as a result of Defendants' failure to ensure that the Plan only paid reasonable RK&A fees. *Id.*, ¶¶ 1-2.

Mr. Geist's analysis begins with an overview of the Plan, which is, among other things, among the top 1% of defined contribution plans in the United States in terms of the number of plan participants and assets. *Id.*, ¶¶ 20-22. Next, the Initial Report explains the relevant aspects of retirement plan services and their associated pricing and fees. *Id.*, ¶¶ 23-33. Of particular relevance to Defendants' Motion, Mr. Geist explains that the "only reliable way to determine the reasonable RK&A fee rate for any particular plan is to request proposals through a formal competitive process," as the "competitive environment . . . enables plan fiduciaries to ensure they are paying no more than the reasonable rate for RK&A services." *Id.*, ¶ 32. The Plan did not receive any competitive bids from RK&A providers until 2020. *Id.* ¶¶ 34-37.

Even then, however, the bidding process "assumed no proprietary investment management services," while "[s]ome of them assumed additional incremental revenue through the addition of managed account services." *Id.*, ¶ 37. Such attributes could be leveraged into discounts, as evidenced by the provision of a $4 reduction from $33 to $29 in per participant RK&A fees by the Plan's current provider, Prudential, in exchange for the opportunity to manage 6% of the Plan assets. *Id.*, ¶¶ 38-41. Mr. Geist estimates -- based on the *actual* bids the Plan received in 2020, Prudential's discount thereafter, and his extensive industry experience --

-4-

that the Plan could have secured at least a $28 per participant RK&A fee, if not lower, during the Class Period had Defendants engaged in a bid solicitation process before and during that period. *Id.*, ¶¶ 42-52.  He then uses the difference between the Plan's actual fees and that estimated reasonable rate to calculate the Plan's resulting losses.  *Id.*, ¶¶ 53-57.

      **B.**    **The Expert Report Of Michael Geist In Reply To Responsive Report Of Steven K. Gissiner**

Mr. Geist also produced his Expert Report of Michael Geist in Reply to Responsive Report Of Steven K. Gissiner ("Reply Report") addressing the criticisms set forth by Defendants' expert, Steven K. Gissiner, in the Responsive Report of Steven K. Gissiner dated March 11, 2022 ("Gissiner Report").[3]  As detailed in the Reply Report, the Gissner Report mischaracterizes Mr. Geist's opinions, contains misleading or erroneous citations to certain data and publications, and makes legal arguments relating to the calculation of pre-judgment interest. Reply Report, ¶¶ 7, 12-48.  Though referenced in their Motion and Memorandum, Defendants do not specifically argue that any aspect of the Reply Report warrants exclusion.

**III.**    **ARGUMENT**

      **A.**    **Standard Of Review**

As Defendants state, Federal Rule of Evidence 702 governs the admissibility of expert evidence, which codifies the standards set forth by the Supreme Court in *Daubert*.  "Under the Supreme Court's decision in *Daubert*, the trial court serves as the gatekeeper, making a pretrial determination 'of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"  *Payne Inc.*, 2022 WL 2315738, at *1 (quoting *Daubert*, 509 U.S. at 592-93).

---

[3] The Gissiner Report is, in part, inadmissible for the reasons stated in the memorandum filed in support of Plaintiff's motion to exclude his expert opinions (ECF No. 69).

"With respect to the reliability of an expert's reasoning or methodology, the Court in *Daubert* articulated several relevant factors: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Id.* (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) and *Daubert*, 509 U.S. at 593-94). "However, the Supreme Court itself has cautioned that these factors are not a 'definitive checklist,' and their application should instead be 'tied to the facts of a particular case.'" *Id.* (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 150).

Moreover, "Rule 702 favors admissibility if the testimony will assist the trier of fact," and *Daubert* "is not a tool to challenge the persuasive value of an expert's conclusions . . . [or] intended to take the place of vigorous cross-examination or intrude on the province of the jury." *Id.* at *2 (citation omitted). Thus, "while 'evidence that has a greater potential to mislead than enlighten should be excluded,' *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), it need not be 'irrefutable or certainly correct,' *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006), to be admitted." *Id.* (original brackets omitted).

Moreover, where, as here, the Court will also sit as factfinder for at least some of Plaintiff's claims, the Court's gatekeeping role is reduced because the Court may always later disregard the expert testimony at trial. *See United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself"); *accord Herndon v. Huntington Ingalls Indus., Inc.*, No. 4:19-CV-52, 2020 WL 5809965, at *4 (E.D. Va. Aug. 28, 2020), *report and recommendation adopted*, 2020 WL 5809996 (E.D. Va. Sept. 29, 2020) (citing cases). Here, Mr. Geist's expert

opinions meet these relevance and reliability standards of Rule 702 articulated in *Daubert* and its progeny, and their weight should be left for the factfinder to determine. None of Defendants' arguments support a contrary conclusion.

      **B.**      **Mr. Geist's Methodology Is Reliable**

Defendants mainly attack Mr. Geist for reaching his reasonable fair market price conclusion "based on nothing more than his say-so." Memo, at 5-7. This is hyperbole belied by Mr. Geist's Report and deposition testimony.

As detailed in his Report and summarized above, Section II.A, *supra*, Mr. Geist's analysis is soundly anchored to the bids for RK&A services the Plan received from several recordkeepers, including Fidelity, in 2020, and the discount Prudential provided after it had been selected as the Plan's new recordkeeper. Report, ¶¶ 37-40; *see* Transcript of Deposition of Michael J. Geist, June 1, 2022 ("Geist Dep."), at 200:3-203:14.[4] He then applies his extensive experience -- and Defendants do not challenge Mr. Geist's credentials or qualifications -- based on the negotiating incentives the Plan would have been able to offer, to extrapolate a conservative figure for the discount the Plan likely should have been able to obtain during the Class Period had Defendants solicited bids during that period. Report, ¶¶ 41-51.

This methodology is sufficient to meet the reliability standard of Rule 702, which the court in *Garthwait* recently confirmed. 2022 WL 3019633, at \*15-\*17. Indeed, there, Mr. Geist was forced to rely on data that was not plan-specific for his analysis; unlike the Plan here, the *Garthwait* plan did not receive any recent bids for RK&A services, so Mr. Geist had to survey

---

[4] The cited excerpts of Mr. Geist's deposition transcript is attached as Exhibit "A" to the accompanying Declaration of Laurie Rubinow.

the RK&A fees of similarly-sized plans to create his baseline data. *See id.* at *16. The court found his approach reasonable and reliable given the context:

> Considering the "nature of the issue", the "subject of his testimony", and Geist's "particular expertise", *Kumho Tire Co.*, 526 U.S. at 150, the court concludes that Geist's methodology is sufficiently reliable as to be admissible. First, to the nature of the issue and the subject of his testimony, Geist opines on a particular issues—the reasonableness of fees charged to retirement plans—for which, he testifies, he is relying on the "best proxy" available to an individual who is not a plan administrator. *See* Geist Report at ¶ 253 n.11; *see also* pp. 31-32, *supra*. Second, Geist applied his "particular expertise" as a retirement plan consultant with over a decade of experience.

*Id.* at *17; *see Ramos*, 461 F. Supp. 3d at 1125-26 ("When precise calculations are impractical, trial courts are permitted significant leeway in calculating a reasonable approximation of the damages suffered") (quoting *Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1047 (9th Cir. 2001)).

Defendants, of course, say otherwise, but their argument is premised on inapposite authorities that do not apply to the context or the methodology Mr. Geist employed here. The expert in *Stolting v. Jolly Roger Amusement Park, Inc.* was proffered to opine on safety warnings at an amusement park to support a negligence claim, not a retirement plan recordkeeping expert on the reasonableness of RK&A fees. *See* 37 F. App'x 80, 83 (4th Cir. 2002). Moreover, in *Stolting*, the Fourth Circuit found that the expert's "qualification" for his "experience as a recreation maintenance supervisor" was, "at best, dubious" from his lack of "experience as a designer or builder of water sales," while "his investigation entailed just three visits to the park." *Id.* at 83, 83 n.3. In *Brodsky v. KaVo Dental Techs., LLC*, the expert was a mechanical engineer proffered to opine that the plaintiff's injury was proximately caused by the "failure to install [a] roll pin" into a ceiling lamp relating to a negligence claim as well. No. CV PX 15-3587, 2017 WL 6388611, at *2 (D. Md. Dec. 14, 2017). Such physics-based type of expert testimony is naturally more "suited to existing frameworks of scientific rigor" than Mr. Geist's RK&A fee-

benchmarking exercise, which is "more reliant on the experience of the expert and 'softer' criteria, such as comparisons to other works or other methods recognized in the discipline." *Payne Inc.*, 2022 WL 2315738, at *1. Accordingly, neither *Stolting* nor *Brodsky* are relevant to the context under which Mr. Geist's experience and analysis should be reviewed.

Meanwhile, the methodology that Mr. Geist uses in this action is not the same as, but rather completely distinct from, the methodologies disallowed in *Pledger* and *Troudt*. In *Pledger*, Mr. Geist applied a "pricing intake or model" to estimate reasonable RK&A fees for the plan at issue, which used a "baseline fee for a standard product offering for a 401(k) plan with similar participants with account balances, cash flows and average account balance" as the starting point for the analysis. 2019 WL 4439606, at *16. The *Pledger* court took issue with Mr. Geist's formulation of the "baseline fee," which was derived only from his experience. *Id.* at *18 ("He failed to use any objective source of pricing information to determine the baseline prices"). Similarly, in *Troudt*, Mr. Geist estimated a "reasonable range" of RK&A fees for the plan at issue premised only on "the experience and knowledge of the relevant industry he gained during his employment with T. Rowe Price." 369 F. Supp. 3d at 1139.

Mr. Geist has since augmented his methodology materially; as noted above, in *Garthwait*, Mr. Geist conducted a survey of similarly-sized plans to establish the baseline for his RK&A fee analysis, which the *Garthwait* court concluded was "sufficiently reliable." 2022 WL 3019633, at *15-*17. Here, again, his baseline is even more precise than in *Garthwait* because it is derived from bids and discounts the Plan actually received in 2020 and thereafter. Accordingly, Defendants' attempt to litigate Mr. Geist's methodologies in *Pledger* and *Troudt* has no bearing on the Court's review of the materially different methodology Mr. Geist applied here.

### C. Mr. Geist's Methodology Is Consistent With His Principles

Next, Defendants parrot the criticism in *Pledger* that Mr. Geist did not, purportedly contrary to his position, solicit bids through a formal competitive process to determine the reasonable RK&A fee rate for the Plan. Memo, at 8-9. But as Defendants recognize, Mr. Geist cannot "go back in time to conduct a formal competitive process." *Id.* at 9; *see* Geist Dep., at 204:22-205:1 ("one of the challenges in these cases is that we have to go back and kind of recreate what could have or should have or would have happened had the fiduciaries done things properly"). And even if he had a time machine, Mr. Geist does not, as a third-party with no legal relationship with the Plan, have the authority to conduct a formal competitive process on the Plan's behalf. Indeed, unlike the *Pledger* court, the court in *Garthwait* recognized these restraints:

> Geist identified one possible flaw in the defendants' exercise of their fiduciary duties: failure to engage in a competitive bidding process. See Geist Report at ¶¶ 89-90. The fact that he himself could not engage in such a competitive bidding process does not make his testimony inadmissible. Indeed, he opines that fiduciaries should engage in a competitive request for proposals precisely because fee pricing information is generally unavailable to the public. *See id.* at ¶ 88. Such a process is the best way, Geist opines, to determine the market rate and create a "competitive environment" to minimize recordkeeping fees. See id. at 88-89. Presuming this is true, **given that Geist is not a plan representative with the ability to solicit bids during the relevant period, Geist could not have applied the methodology he advocates for plan fiduciaries.**

2022 WL 3019633, at *16 (emphasis added).

As the *Garthwait* court further recognized, the obstacles that prevent Mr. Geist from conducting a formal bidding process for the Plan during the relevant period do not negate Mr. Geist's reliable methodology for extrapolating reasonable RK&A fees from other sources. *See id.* ("The defendants are free to cross examine Geist as to his use of a survey rather than a competitive bidding process, *see Daubert*, 509 U.S. at 596, but the court does not preclude

-10-

Geist's testimony on this ground").  Defendants are free to challenge, at trial, Mr. Geist's use of the Plan's 2020 RK&A fee bids and Prudential's discount as his baseline, but those potential challenges do not render Mr. Geist's approach unreliable under *Daubert*.

Moreover, Mr. Geist was forced to use his "alternative" technique **because** of Defendants' failure to conduct a formal competitive bidding process at the appropriate time. Given Defendants' culpability, wide latitude should be afforded to Mr. Geist's estimates as "[r]ecovery under such circumstances accords with the 'principle of long standing in trust law that once the beneficiary has shown a breach of the trustee's duty and a resulting loss, the risk of uncertainty as to the amount of the loss falls on the trustee,'" and "'[a]ny doubt or ambiguity' as to the value of damages 'should be resolved against [the breaching party].'"  *Ramos*, 461 F. Supp. 3d at 1125 (quoting *Confederated Tribes of Warm Springs Reservation of Ore. v. United States*, 248 F.3d 1365, 1371 (Fed. Cir. 2001), and *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (brackets in original)).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

DATED:  August 26, 2022            /s/ *Laurie Rubinow*
                                   James E. Miller (admitted *pro hac vice*)
                                   Laurie Rubinow (admitted *pro hac vice*)
                                   MILLER SHAH LLP
                                   65 Main Street
                                   Chester, CT 06412
                                   Telephone: (866) 540-5505
                                   Facsimile: (866) 300-7367
                                   Email: jemiller@millershah.com
                                          lrubinow@millershah.com

        James C. Shah (admitted *pro hac vice*)
        Alec J. Berin (admitted *pro hac vice*)
        MILLER SHAH LLP
        1845 Walnut Street, Suite 806
        Philadelphia, Pennsylvania 19103
        Tel.: (866) 540-5505
        Fax: (866) 300-7367
        Email: jcshah@millershah.com
              ajberin@millershah.com

        Mark K. Gyandoh (*admitted pro hac vice*)
        CAPOZZI ADLER, P.C.
        312 Old Lancaster Road
        Merion Station, Pennsylvania 19066
        Tel.: (610) 890-0200
        Fax: (717) 233-4103
        Email: markg@capozziadler.com

        Donald R. Reavey (admitted *pro hac vice*)
        CAPOZZI ADLER, P.C.
        2933 North Front Street
        Harrisburg, Pennsylvania 17110
        Tel.: (717) 233-4101
        Fax: (717) 233-4103
        Email: donr@capozziadler.com

        Timothy F. Maloney
        Jay P. Holland
        Alyse L. Prawde
        JOSEPH, GREENWALD & LAAKE
        6404 Ivy Lane, Suite 400
        Greenbelt, Maryland 20770
        Tel.: (301) 220-2200
        Fax: (240) 553-1737
        Email: tmaloney@jgllaw.com
              jholland@jgllaw.com
              aprawde@jgllaw.com

        *Attorneys for Plaintiffs, the Plan*
        *and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 26, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Laurie Rubinow*
Laurie Rubinow