**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| *In re MedStar ERISA Litigation* | Master File No. 1:20-cv-01984-JKB |
| | Chief Judge James K. Bredar |
| | January 19, 2024 |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 3

        A.      The Parties, the Plan, and Plaintiff's Claims ......................................... 3

        B.      Procedural Status .................................................................................... 4

        C.      The Settlement Negotiations ................................................................... 5

        D.      The Proposed Settlement ......................................................................... 6

III.    ARGUMENT ........................................................................................................ 9

        A.      The Settlement Warrants Preliminary Approval ...................................... 9

                1.      Standard of Review ....................................................................... 9

                2.      The Settlement is Fair ................................................................. 11

                3.      The Settlement is Adequate ........................................................ 13

                4.      The *Pro Rata* Plan of Allocation is Fair and Reasonable .......... 16

                5.      The Proposed Notice Plan Should be Approved .......................... 17

                6.      The Settlement Class Should be Preliminarily Certified ............ 19

IV.     CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022)...........................................................................12

*Allen v. Novant Health*,
  2023 WL 7287506  (M.D.N.C. Nov. 6, 2023) ...........................................17

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ..................................................................................18

*Berry v. Wells Fargo & Co.*,
  2020 WL 9311859 (D.S.C. July 29, *2020*) ...............................................16

*Boger v. Citrix Systems, Inc.*,
  2023 WL 1415625 (D. Md. Jan. 31, 2023) ...................................................9

*Clark v. Duke Univ.*,
  2019 WL 2588029 (M.D.N.C. June 24, 2019)................................... *passim*

*Compton v. North Central Virginia Restaurants, Inc.*,
  2022 WL 4008719 (W.D. Va. Sep. 2, 2022)...........................................13, 14

*Curtis v. Genesis Engineering Solutions, Inc.*,
  2022 WL 1062024 (D. Md. Apr. 8, 2022) ....................................................9

*Domonske v. Bank of America, N.A.*,
  790 F. Supp. 2d 466 (W.D. Va. Jun. 14, 2011).........................................11

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975).....................................................................15

*Good v. West Virginia-American Water Co.*,
  2017 WL 2884535 (S.D.W. Va. Jul. 6, 2017)...........................................9, 15

*In re Ames Dep't Stores Inc. Debenture Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993).....................................................................14

*In re Bear Stearns Cos., Ins. Sec. Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...........................................................13

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 2d 837 (E.D. Va. Sep. 26, 2016)...........................................15

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................15

*In re Jiffy Lube Securities Litig.*,
  927 F.2d 155 (4th Cir. 1991).......................................10, 11, 12, 15

*In re Lumber Liquidators Chinese Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020)..............................................9

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................13

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. Jul. 10, 2001) .......................13, 14, 15

*In re Mutual Funds Litig.*,
  2010 WL 2307568 (D. Md. May 19, 2010) ...........................17, 18

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996) ..........................................16

*In re Saxon Sec. Litig.*,
  1995 WL 48177 (S.D.N.Y. 1971).........................................10

*In re Vitamins Antitrust Litig.*,
  2000 WL 1737867 (D.D.C. Mar. 31, 2000) ...............................14

*In re Wachovia Corp. ERISA Litig.*,
  2011 WL 13262040 (W.D.N.C. Oct. 24, 2011) ............................18

*Kelly v. Johns Hopkins Univ.*,
  2020 WL 434473 (D. Md. Jan. 28, 2020) ...........................11, 12, 14

*Kirven v. Cent. States Health & Life Co. of Omaha*,
  2015 WL 1314086 (D.S.C. Mar. 23, 2015) ...............................10

*Lamascolo v. Parsons Brinckerhoff Inc.*,
  2009 WL 3094955 (E.D. Va. Sept. 28, 2009).............................9

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995).............................................10

*McDaniels v. Westlake Services LLC*,
  2014 WL 556288 (D. Md. Feb. 7, 2014).................................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................16

*S.C. Nat'l Bank v. Stone,*
  139 F.R.D. 335 (D.S.C. 1991)..................................................................10

*Sacerdote v. New York Univ.,*
  328 F. Supp. 3d 273 (S.D.N.Y. 2018)....................................................14

*Savani v. URS Prof'l Solutions LLC,*
  121 F. Supp. 3d 564 (D.S.C. 2015).........................................................12

*Sharp Farms v. Speaks,*
  917 F.3d 276 (4th Cir. 2019).............................................................9, 12

*Sims v. BB&T Corp.,*
  2019 WL 1995314 (M.D.N.C. May 6, 2019)..............................11, 14, 18

*Smith v. Krispy Kreme Doughnut Corp.,*
  2007 WL 119157 (M.D.N.C. Jan. 10, 2007)............................................12

*Starr v. Credible Behav. Health Inc.,*
  2021 WL 214542 (D. Md. May 26, 2021) ................................................9

*Strang v. JHM Mort. Securities Ltd. Partnership,*
  890 F.Supp. 499 (E.D. Va. 1995)............................................................11

*Tatum v. R.J. Reynolds Tobacco Co.,*
  254 F.R.D. 59 (M.D.N.C. 2008) ............................................................18

**Statutes**

29 U.S.C. § 1104.............................................................................................3

29 U.S.C. § 1109.............................................................................................3

29 U.S.C. § 1132.............................................................................................3

**Rules**

Fed. R. Civ. P. 23.........................................................................................18

Fed. R. Civ. P. 23(a)..................................................................................2, 17

Fed. R. Civ. P. 23(b)(1)..........................................................................2, 17, 18

Fed. R. Civ. P. 23(c)(1)(C) ..........................................................................17

Fed. R Civ. P. 23(e) ...............................................................................8, 9, 16

Fed. R. Civ. P. 23(e)(1)...........................................................................16, 17

Fed. R. Civ. P. 23(e)(2).........................................................................................................9

Plaintiff Elsa Reed ("Plaintiff"), on behalf of the proposed Settlement Class and the MedStar Health, Inc. Retirement Savings Plan (the "Plan"), respectfully submits this Memorandum of Law in Support of her Unopposed[1] Motion for Preliminary Approval of Class Action Settlement ("Motion"), requesting the Court issue an Order that: (1) preliminarily approves the Settlement Agreement[2] dated January 19, 2024 with Defendants;[3] (2) finds that the Class may be maintained through such time as the Court enters an order granting final approval of the Settlement; (3) approves and directs effectuation of the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order;[4] and (4) sets a final approval hearing on a date convenient for the Court at least 140 days after the entry of an order preliminarily approving the proposed settlement (the "Settlement").

## I.    INTRODUCTION

Following several years of thorough and active litigation in this complex ERISA action, including dispositive and procedural motions, comprehensive fact and expert discovery, and preparation for a trial originally scheduled to begin in February 2024, the Parties negotiated a proposed settlement ("Settlement") that would provide total relief of $11,800,000.00 to the Settlement Class.  This represents a substantial and favorable recovery in view of the inherent

---

[1] Defendants have indicated that they do not oppose this Motion.

[2] The Settlement Agreement and Exhibits A through E thereto are collectively attached as Exhibit 1 to the accompanying Declaration of Laurie Rubinow ("Rubinow Decl."). Capitalized terms not defined herein have the same meaning as in the Settlement Agreement.

[3] Defendants are MedStar Health, Inc. ("MedStar Health"), the Board of Directors of MedStar Health, Inc. ("Board"), the MedStar Health, Inc. Retirement Savings Plan Committee ("Administrative Committee" or "Committee"), and members of the Board or Administrative Committee  (collectively, "Defendants").

[4] A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

risks and uncertainty of continued litigation through trial and potential appeals.[5]  Plaintiff and

Class Counsel submit that the Settlement is fair, reasonable, adequate, and in the best interests of

the Settlement Class.

Plaintiff and Class Counsel vigorously pursued relief on behalf of the Plan, and

Defendants and Defense Counsel vigorously defended against the allegations in the Complaint.

The Parties agreed to the Settlement after sufficient discovery and disclosure to enable the

Parties to assess the strengths and weaknesses of their respective positions and the value of

theoretical outcomes in the case.  The Settlement was reached through arm's-length negotiations

by experienced counsel, including a private mediation with an experienced neutral mediator, and

follow up exchanges through the mediator and counsel.  Resolving the action at this juncture

allows the Parties to avoid continued and costly litigation at trial, which could result in recovery

far less than that provided by the Settlement, or none at all.

As part of the settlement approval process, an Independent Fiduciary will be engaged on

behalf of the Plan to review and authorize the Settlement, and the Independent Fiduciary's

authorization of the Settlement will be submitted in the form of a written opinion filed in advance

of the fairness hearing.   The anticipated Independent Fiduciary report will be based on all matters

appearing on the record, the Parties' mediation submissions and expert analyses (if requested), as

well as separate interviews with Class Counsel and Defendants' Counsel and any other materials

requested by the Independent Fiduciary.  The Independent Fiduciary's report will provide the

Court an independent touchstone to assess the fairness of the Settlement.

The Court previously certified this action as a class action based upon findings that each

---

[5]This result compares favorably with settlement amounts in other similar ERISA class actions.
*See* Rubinow Decl. ¶¶ 6, 18.

of the prerequisites of Rule 23(a) and 23(b)(1) were met.  None of the circumstances warranting certification at that stage have changed.  In fact, the circumstances of the proposed Settlement counsel further for class action treatment and support an order maintaining certification through the entry of a final judgment on Plaintiff's claims on behalf of the Plan and Settlement Class.

All of the prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied.  Thus, Plaintiff respectfully submits that the Motion should be granted, and notice should be provided to the Settlement Class in the form and manner proposed.

## II.     BACKGROUND

### A.  The Parties, the Plan, and Plaintiff's Claims

Plaintiff is a former employee of MedStar Health and a participant in the Plan, a defined contribution retirement plan with assets in excess of $2.5 billion and over 27,500 participants by December 31, 2020.  MedStar Health sponsors the Plan and Plaintiff alleges Defendants are each fiduciaries of the Plan.  Plaintiff brings this action in a representative capacity on behalf of the Plan and its participants and beneficiaries under Sections 404, 409, and 502 of ERISA.  *See* 29 U.S.C. §§ 1104, 1109, 1132.

Plaintiff contends that Defendants, as fiduciaries of the Plan, owe undivided duties of prudence and loyalty to the Plan and breached their duties as described below.  Retirement plan fiduciaries are obligated to act for the exclusive benefit of participants, facilitate the prudent investment of plan assets, and ensure that a plan's expenses are fair and reasonable in relation to the services obtained by the plan.  *See* 29 U.S.C. § 1104 (setting forth fiduciary duties under ERISA).  Plaintiff principally alleges that Defendants breached duties owed to the Plan by: (1) failing to appropriately monitor and consequently retaining unsuitable investments in the Plan instead of offering readily available suitable alternative investments; and (2) causing the Plan to pay unreasonable fees, including recordkeeping and administrative ("RK&A") fees and

investment management fees.

In the Complaint,[6] Plaintiff specifically alleges Defendants imprudently retained the Fidelity Freedom funds ("Active Suite" or "Freedom funds"), the John Hancock Disciplined Value Fund Class R6 ("John Hancock fund"), and the Baron Small Cap Fund Institutional Class ("Baron fund") pursuant to a deficient investment monitoring process. Plaintiff also alleges Defendants failed to appropriately benchmark, bid, and negotiate with respect to the Plan's service arrangements and thereby caused the Plan to incur unreasonable RK&A expenses in relation to the services obtained by the Plan, and similarly caused the Plan to pay excessive investment management fees.

### B.  Procedural Status

The Parties were engaged in preparation for the trial scheduled to begin in February 2024 when the Settlement was reached. The Parties have completed all discovery and a class was certified pursuant to the Parties' stipulation on July 12, 2022. *See* ECF No. 64. No motions for summary judgment were filed and the deadline for such motions elapsed. The Court has resolved motions to exclude expert witnesses. In short, before negotiating the Settlement, the Parties were in a position to fully assess and evaluate the strength of Plaintiff's claims, Defendants' defenses, and the risks of continued litigation through the upcoming trial, as well as post-trial proceedings and appeals.

Specifically, during the litigation, Defendants produced, and Plaintiff and Class Counsel reviewed, tens of thousands of pages of relevant documents and communications reflecting the relationship between and among the Plan's fiduciaries, Defendants' management and

---

[6]The operative complaint is the Second Amended Complaint (ECF No. 110) filed August 10, 2023.

administration of the Plan, and Defendants' process for monitoring the Plan's investments and service providers. *See* Rubinow Decl. ¶ 11. These documents included the governing documents of the Plan and its fiduciary committee, meeting minutes and related records of the Plan's fiduciaries, materials provided to the Plan's fiduciaries to support their decision-making, disclosures by service providers, disclosures made to participants in the Plan, and email communications between and among Plan fiduciaries and others involved in the management and administration of the Plan. *See* Rubinow Decl. ¶ 11.

The Parties also engaged in extensive deposition discovery and exchanged expert reports. *See* Rubinow Decl. ¶¶ 12–13. Defendants have taken Plaintiff's deposition, and Plaintiff has deposed numerous party and third-party fact witnesses, including the Plan's fiduciaries, MedStar Health employees involved in managing the Plan, and a representative of NFP Retirement Inc., the Plan's investment adviser for a portion of the relevant period. *See* Rubinow Decl. ¶ 12. In addition, the Parties disclosed expert reports and subjects of anticipated testimony at trial by experts bearing on issues of fiduciary process standards, the retirement plan recordkeeping market and recordkeeping fee rates, fiduciary investment principles, and the Plan's alleged losses. *See* Rubinow Decl. ¶ 12. The Parties each deposed the experts anticipated to testify at trial on behalf of an adverse party. *See id.*

### C. The Settlement Negotiations

The Settlement was the product of comprehensive negotiation by the Parties, conducted while the Parties simultaneously prepared the case for the trial scheduled to begin in February 2024. *See* Rubinow Decl. ¶ 9. The Settlement was the result of vigorous negotiation by the Parties, which initially included a full-day mediation held in March 2023. *See* Rubinow Decl. ¶ 15. There has been no collusion or complicity of any kind in connection with the Settlement reached in this case or any related negotiations between the Parties. *See* Rubinow Decl. ¶ 16.

During the settlement negotiations, the Parties communicated their respective positions concerning Plaintiff's likelihood of success on the claims and potential recovery on behalf of the Plan, conducted independent analyses to support the claims and defenses and evaluate potential resolutions, and participated in a mediation and follow-up negotiations with Robert A. Meyer, Esquire, of JAMS.  *See* Rubinow Decl. ¶ 15.  Mr. Meyer is one of the most well-respected and experienced mediators in the country in complex financial disputes and has significant experience in mediating ERISA actions. *See id.*  While no settlement was reached on the day of the mediation, Mr. Meyer facilitated follow-up negotiations between the Parties, which eventually resulted in the Settlement.  *See* Rubinow Decl. ¶ 16.

### D.  The Proposed Settlement

The Settlement provides that, in exchange for dismissal of the Class Action and a release of claims, Defendants (or their insurers) will pay $11,800,000.00 into a Settlement Fund, to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation.  *See* Settlement Agreement §§ 1.27, 4.4–4.5, 5.2, 7.1–7.2, Ex. B.  The Settlement Agreement and the proposed Preliminary Approval Order also set forth the Notice Plan and describe Plaintiff's anticipated requests for payment of Attorneys' Fees and Litigation Expenses to Class Counsel and for a Case Contribution Award, all of which are subject to the Court's approval.  *See* Settlement Agreement, §§ 1.3, 1.5, 1.10, 1.29, 2.2.8, 6.1–6.2, Ex. A.

Plaintiff and Class Counsel view the settlement amount as fair, reasonable, and adequate.  *See* Rubinow Decl. ¶¶ 18, 27.  Class Counsel, which has substantial experience litigating ERISA cases believes that the settlement amount compares favorably with settlements in other similar ERISA actions and represents a fair and reasonable compromise of Plaintiff's disputed claims.

*See* Rubinow Decl. ¶¶ 6, 18.  Class Counsel also believes that the anticipated requests for

Attorneys' Fees, Litigation Expenses, and Case Contribution Award to Plaintiff are likewise fair

and reasonable, and consistent with requests in analogous ERISA cases.  *See* Rubinow Decl. ¶¶

21–23.

The Settlement Agreement provides for the approval of the Settlement by an Independent

Fiduciary.  *See* Settlement Agreement, §§ 1.28, 2.1.  As part of the settlement approval process,

an Independent Fiduciary will be engaged on behalf of the Plan to review and authorize the

Settlement, and the Independent Fiduciary's authorization of the Settlement and the Plan's

release of claims will be submitted in a written opinion filed in advance of the fairness hearing.

*See id.*  The anticipated Independent Fiduciary report will be based on the entire record and any

materials requested by the Independent Fiduciary, as well as separate interviews with Plaintiff's

and Defendants' counsel.  *See id.*  The Independent Fiduciary report will offer the Court an

independent basis to assess the fairness of the Settlement .

The Settlement Agreement and the proposed Preliminary Approval Order also set forth

the Notice Plan.  *See* Settlement Agreement, §§ 1.50, 1.51, 2.2.3, 2.2.4, 2.4, Ex. A.  Upon the

entry of preliminary approval, the Settlement Administrator will cause the approved form of

Notice to be sent by email or first class mail to all Plan participants at their known addresses on

file with the Plan's Recordkeeper.  *See* Settlement Agreement §2.2.5, Ex. B.  In other words, the

Class Members will receive actual notice of the Settlement with details on how to object to the

Settlement and related applications.  *See id.*  In addition, the Settlement Administrator will also

establish a dedicated website with the Notice, the Settlement Agreement, and the Complaint, as

well as other documents related to the litigation and the Settlement.  *See* Settlement Agreement

§13.2, Ex. B.  This website—which will be identified in the Notice sent or emailed to all Class

Members—will provide further information so that Class Members may sufficiently understand and assess the Settlement. *See id.* Class Counsel and the Settlement Administrator will also respond to any inquiries made by members of the Settlement Class.

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate, and merits final approval. Plaintiff proposes the following schedule for Notice and approval proceedings:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on a date convenient for the Court within 45 days of the Preliminary Approval filing |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 9(b) | Within 30 days of entry of Preliminary Approval Order |
| Settlement Administrator to send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 9(a) | Within 30 days of entry of Preliminary Approval Order |
| Motion for Final Approval and Related Applications to be filed | ¶¶ 10, 11 | Not later than 45 days before Fairness Hearing |
| Independent Fiduciary Report to be submitted | Settlement Agreement § 2.1.2 | Not later than 35 days before the Fairness Hearing |
| Deadline for filing objections | ¶ 12 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 12 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 140 days after entry of the Preliminary Approval Order |

Finally, Plaintiff requests that the Court certify the Settlement Class described in the

Preliminary Approval Order.  *See* Settlement Agreement, §§ 1.48, Ex. A ¶ 1.  The Settlement Class is defined as:

> All persons who participated in the Plan at any time during the Class Period (July 6, 2014 through the date the Preliminary Approval Order is entered by the Court), including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period.  Excluded from the Settlement Class are Defendants and their Beneficiaries.

*Id.*  The definition of the Settlement Class is materially identical to the Class that the Court previously certified.[7]  The minor changes establish an "end date" for the Class as of the date of the Preliminary Approval Order, and expand the language to include "alternate payees."  *Id.* Maintenance of the Class will facilitate the administration of the Settlement.

## III.   ARGUMENT

### A.  The Settlement Warrants Preliminary Approval

#### 1.  Standard of Review

Federal Rule of Civil Procedure 23(e) provides that the claims of a certified class may be settled "only with the court's approval."  Fed. R. Civ. P. 23(e).  Before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  These factors mirror the standards established by the Fourth Circuit for assessing whether a class action settlement is fair and adequate.  *See In re: Lumber Liquidators Chinese Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 n. 8 (4th Cir. 2020) ("[O]ur factors for assessing class-action settlements almost completely

---

[7]On July 12, 2022, the Court entered an Order (ECF No. 64) which certified the following class: "All participants and beneficiaries in the MedStar Health, Inc. Retirement Savings Plan at any time on or after July 6, 2014 to the present (the "Class Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period."

overlap with the new Rule 23(e) factors.").

When reviewing a motion for preliminary approval, the Court must evaluate if the settlement is "within the range of possible approval," such that there is "probable cause to notify the class members of the proposed settlement." *Curtis v. Genesis Engineering Solutions, Inc.*, 2022 WL 1062024, at *3 (D. Md. Apr. 8, 2022) (quoting *Starr v. Credible Behav. Health Inc.*, 2021 WL 214542, at *5 (D. Md. May 26, 2021)) (internal citation omitted).  "At this initial stage, the Court must make 'a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms' and 'direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'"  *Id.*, at *5 (quoting Manual for Complex Litigation § 21.632).  "In this regard, courts have recognized that 'there is an overriding public interest in favor of settlement, particularly in class action suits.'"  *Boger v. Citrix Systems, Inc.*, 2023 WL 1415625, at *3 (D. Md. Jan. 31, 2023) (citing to *Lamascolo v. Parsons Brinckerhoff Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).

The Court's role at the preliminary approval stage is more circumscribed than at the final approval stage.  *See Good v. West Virginia-American Water Co.*, 2017 WL 2884535, at *14 (S.D.W. Va. Jul. 6, 2017) (holding that the bar is "lowered" at the preliminary stage and the court is looking for "grounds to doubt its fairness or other obvious deficiencies.").  In this role, "'the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.'"  *Sharp Farms v. Speaks*, 917 F.3d 276, 294 (4th Cir. 2019) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)).  Nevertheless, courts begin with the "strong initial presumption that the compromise is fair and reasonable."  *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (quoting *In re Saxon Sec. Litig.*, 1995 WL 48177 (S.D.N.Y.

1971)) (internal citations omitted);  *Kirven v. Cent. States Health & Life Co. of Omaha*, 2015 WL 1314086, at *5 (D.S.C.  Mar. 23, 2015) ("Absent evidence to the contrary, the court may presume that the settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.").

### 2.  The Settlement is Fair

The Fourth Circuit has articulated several factors to assess whether a class action settlement is fair and the result of good faith, arm's length negotiation.  *See In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158–159 (4th Cir. 1991).  The *Jiffy Lube* fairness factors are: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Id.*, at 159; *see also McDaniels v. Westlake Services LLC*, 2014 WL 556288 (D. Md. Feb. 7, 2014).

The *Jiffy Lube* factors support a finding that the Settlement is the result of arm's length bargaining, and not the result of collusion.  The Settlement was vigorously negotiated by the Parties only after comprehensive fact and expert discovery was completed.  *See* Rubinow Decl. ¶ 9.  Plaintiff and Class Counsel reviewed tens of thousands of pages of relevant documents produced by Defendants, subpoenaed records from the Plan's third-party providers, deposed numerous party and third-party fact witnesses, retained expert witnesses and took depositions of Defendants' experts.  *See* Rubinow Decl. ¶¶ 11–13.  The Parties resolved the action only after they had a full opportunity to evaluate the strengths and weaknesses of their respective positions and the risks of pursuing their claims and defenses at trial.  *See* Rubinow Decl. ¶ 10; *see also Jiffy Lube*, 927 F.2d at 159 ("[w]e have held that a reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial.");

*Domonske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. Jun. 14, 2011) (holding settlement of a mature case points away from collusion).

The Settlement was negotiated by highly experienced counsel on behalf of the Settlement Class—as well as Defendants—over the course of several months and after a mediation and follow-up negotiation under the auspices of a highly-regarded neutral, supporting a finding of fairness. *See Strang v. JHM Mort. Securities Ltd. Partnership*, 890 F.Supp. 499, 501–502 (E.D. Va. 1995) (finding the *Jiffy Lube* fairness standard was satisfied where there were sufficiently extended and detailed settlement negotiations by counsel with a wealth of experience and knowledge in the relevant area of law). Rather than take the first offer at mediation, Plaintiff and Class Counsel stood their ground for months while engaging in additional motion practice around an amended pleading and the exclusion of expert witnesses, as well as further trial preparation. *See Clark v. Duke Univ.*, 2019 WL 2588029, at \*5 (M.D.N.C.  June 24, 2019) (approving a similar ERISA settlement as fair where the case had an "advanced posture," extensive discovery and depositions were taken, and experienced ERISA class counsel engaged in mediation for over six months before reaching an agreement); *see also Sims v. BB&T Corp.*, 2019 1995314, at \*4 (M.D.N.C. May 6, 2019) (approving ERISA class settlement reached on the eve of trial as fair).  In addition, the involvement of a well-known, highly experienced mediator in the settlement negotiations, and contemplated review by an Independent Fiduciary, are further evidence of the fairness of the Settlement.

Class Counsel's anticipated application to the Court for an award of Attorneys' Fees of up to one-third of the Settlement amount is fair, reasonable, and consistent with analogous ERISA cases and Fourth Circuit law. *See Kelly v. Johns Hopkins Univ.*, 2020 WL 434473, at \*3 (D. Md. Jan. 28, 2020) (finding "[i]n similar ERISA excessive fee cases, and in particular those

brought by Class Counsel, district courts have consistently recognized that a one-third fee is the market rate.") (emphasis added) (collecting cases).  The *Kelly* court recognized the "special expertise" required of Class Counsel to litigate a complex ERISA case against sophisticated corporate defendants "to the point at which settlement is a realistic possibility."  *Id.*, at *3–4 (citing to *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007)).  Additionally, the proposed Case Contribution Award is typical for awards where a plaintiff has expended time participating in class litigation through to trial.  *See Savani v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 576 (D.S.C. 2015) (awarding $20,000 to a class representative finding "[a] substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts.").  Thus, the Settlement's provisions for Attorneys' Fees and the Plaintiff's Case Contribution Award are also fair and reasonable, and will be briefed fully in advance of final approval, after the Settlement Class receives notice and an opportunity to comment on the anticipated requests.

For the foregoing reasons, the Settlement satisfies the fairness requirement and should be preliminarily approved by the Court.

### 3.  The Settlement is Adequate

The Fourth Circuit in *Jiffy Lube* also provided five factors for assessing whether a settlement is adequate: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement."  *Jiffy Lube*, 927 F.2d at 159; *see also 1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022) (applying

same factors).  "The most important factors in this analysis are the relative strength of the

plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses."

*Sharp Farms*, 917 F.3d at 299.

While Plaintiff and Class Counsel believe in the strength Plaintiff's claims, as well as

Plaintiff's ability to recover at trial, the outcome at trial is inherently risky.  First, establishing

Defendants' liability would rely on the Court crediting Plaintiff's proffered evidence and the

testimony of Plaintiff's fiduciary process experts that Defendants' procedures for monitoring the

Plan's investments and fees were insufficient, and resulted in the Plan's retention of unsuitable

investments and payment of excessive fees.  Defendants have disclosed experts to counter

Plaintiff's experts on each subject for which Plaintiff anticipated presenting expert testimony.

There is a risk that the Court would accord more credibility to Defendants' experts and evidence,

and since the burden of proof is on Plaintiff, there is a risk that the experts "cancel" each other

out.  *See Compton v. North Central Virginia Restaurants, Inc.*, 2022 WL 4008719, at *3 (W.D.

Va. Sep. 2, 2022) ("[T]he court recognizes that 'when the success of a party's case turns on

winning a so-called 'battle of the experts,' victory is by no means assured.'") (citing *In re Bear

Stearns Cos., Ins. Sec. Litig.*, 909 F. Supp. 2d 259, 266–67 (S.D.N.Y. 2012)).

Further, even if Plaintiff prevails on issues of Defendants' liability, proving damages is

also difficult and uncertain.  *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010)

("The damages issue is uncertain because courts have not had the occasion to apply a damages

measure in [an ERISA] case like this after a trial.").  For example, Plaintiff anticipated

presenting evidence at trial that the Plan was paying more than the reasonable market rate for the

Plan's RK&A services.  However, there is no transparent public market for RK&A fees.

Defendants would present contrary evidence and testimony on reasonable market rates.

14

Likewise, Plaintiff anticipated presenting evidence and testimony regarding the Plan's losses

resulting from its retention of the challenged investments instead of suitable alternative funds.

Defendants would present contrary evidence and testimony that the Plan's investment options

were prudent and that the Plan suffered no losses.  As a result, Plaintiff would face serious

challenges as it relates to establishing damages at trial.  *See In re MicroStrategy, Inc. Sec. Litig.*,

148 F. Supp. 2d 654, 667 (E.D. Va. Jul. 10, 2001) (stating "the damages issue would have

become 'a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury.'")

(citing to *In re Ames Dep't Stores Inc. Debenture Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993)).

The Settlement "assures that the Plaintiffs receive an immediate, tangible benefit instead of a

future uncertain award." *Compton v. North Central Virginia Restaurants, Inc.*, 2022 WL

4008719, at *3; *see also MicroStrategy, Inc.*, 148 F. Supp.2d at 667 ("a bird in hand is worth two

in the bush"); *cf. Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) (ERISA

proceedings resulting in findings in favor of fiduciary defendants).  In view of the difficulties and

risks of trial, as well as the potential years of delay of appeals taken by either party, the

Settlement is a very favorably outcome.

The Settlement provides substantial immediate compensation to the Class Members in an

amount that compares favorably to the settlements of other similar ERISA cases.  *See* Rubinow

Decl. ¶¶ 6, 18; *see also Sims*, 2019 WL 1995314, at *4 (settlement of $24 million for a Plan with

70,000 participants); *Clark*, 2019 WL 2588029, at *2 (settlement of $10,650,000 for Plan with

58,594 participants); *Kelly*, 2020 WL 434473, at *3 (settlement of $14 million for a Plan with

24,000 participants).  The Settlement provides for average relief of $481 to Class Members,

which exceeds the per-class member amount of $342 in *Sims* and the $118 in *Clark*, both of

which were approved on findings of fairness.  "The test is whether the settlement is adequate and

reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *2 (D.D.C. Mar. 31, 2000). The Settlement is adequate and consistent in amount, measured on both a gross and per-class member basis.

While the Court already has sufficient reason to conclude that the Settlement is fair and adequate, the Settlement provides for an evaluation and opinion of an Independent Fiduciary. *See* Settlement Agreement, §§ 1.28, 2.1. All else aside, an evaluation by an Independent Fiduciary should assure the Court of the fairness and adequacy. *See Clark*, 2019 WL 2588029, at *6 (concurring with the independent fiduciary evaluation on fairness). The Court should also place considerable weight on the opinion of experienced and informed counsel supporting the settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *MicroStrategy, Inc.*, 148 F. Supp. 2d at 665.

For the foregoing reasons, the Settlement satisfies the adequacy requirement, it eliminates the risk and uncertainty of trial for a substantial immediate benefit to the Class Members, it compares favorably with settlements of other similar ERISA cases, it will be subject to review by an Independent Fiduciary, and it should be approved by the Court.

### 4. The *Pro Rata* Plan of Allocation is Fair and Reasonable

The Plan of Allocation is also subject to review by the Court for fairness and reasonableness. "A court must scrutinize a plan of allocation for settlement proceeds under the same standard of fairness and adequacy as applicable to the settlement on the whole." *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 2d 837, 843 (E.D. Va. Sep. 26, 2016). A plan of allocation must be fair to all claimants and have some rational justification. *Good*, 2017 WL 2884535, at *18 (citing to *Jiffy Lube*, 927 F.2d at 158; *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). The primary concern is the protection of

absent class members whose rights may not have been given adequate consideration during the settlement negotiations." *Jiffy Lube*, 927 F.2d at 158.

The Plan of Allocation provides for *pro rata* distribution of the Qualified Settlement Fund among Settlement Class members who invested in the challenged investments based on their balances invested in the funds during the Class Period, and Settlement Class members who paid the allegedly excessive RK&A fees based on their account balances used to determine the fees they paid during the Class Period. *See* Settlement Agreement, Ex. B.  The Plan of Allocation applies a premium to the claims involving the challenged investments, as the damages associated with such claims were greater and, in Class Counsel's judgment, there was greater risk in recovering on the excessive fee claims. *See id.*  This exact type of *pro rata* allocation has repeatedly been found to be "fair, adequate and reasonable," under Rule 23(e).  *See Clark*, 2019 WL 2588029 at *11 (holding the "settlement treats class members equitably relative to each other" in ERISA case where all members "will be paid proportionately to their average quarterly balances"); *see also Berry v. Wells Fargo & Co.*, 2020 WL 9311859, at *11 (D.S.C. July 29, 2020) (approving settlement where the "plan of allocation will distribute the net settlement fund on a pro rata basis.").

The Plan of Allocation should be approved by the Court as fair, reasonable, and adequate.

### 5.  The Proposed Notice Plan Should be Approved

For class action settlements, the Court must "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. of Civ. P. 23(e)(1).  To satisfy due process, class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368

(S.D.N.Y. 1996) (citing to *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Although for a non-opt out ERISA case like this one, "fair notice as the court directs" is all that is required.  *Berry*, 2020 WL 9311859, at *9.

Notwithstanding this relatively modest requirement, the Settlement provides for thorough notice that satisfies Rule 23(e)(1), in terms of both procedure and substance.  If approved, within 30 days of the Court's entry of the Preliminary Approval Order, the Settlement Administrator will send the Class notice (and a claim form, if applicable) by email or first class mail to the Class Members identified based on data from the Plan's Recordkeeper.  *See* Settlement Agreement §2.2.5, Ex. B, Proposed Preliminary Order, ¶¶ 7, 9(a), Ex. C.  If either is returned as undeliverable, the Settlement Administrator will use commercially reasonable efforts to locate a Class Member and re-send.  *See* Settlement Agreement §2.4, Ex. B.  The Settlement Administrator will also establish a Settlement Website and notify Class Members of the same.  *See* Settlement Agreement §13.2, Ex. B.  These procedures provide Class Members with actual notice of the Settlement in two different ways, along with claim forms for Former Participants to participate in the Settlement.

This Notice also provides all the information necessary to satisfy Rule 23(e)(1).  The Notice explains the nature of this lawsuit, informs Class Members of the Settlement and its terms, and informs the Class Members that they will be bound by the release contained in the Settlement Agreement.  *See* Settlement Notice, Ex. A.  The Notice informs Class Members of the Settlement amount, the anticipated requests for Attorneys' Fees, Litigation Expenses, and a Case Contribution Award, and explains the procedure for Class Members to object.  *See id.*  The Notice informs Class Members of the date, location and time of the final approval hearing, and explains that they have an opportunity to appear and have their objections heard by the Court.

*See id.*  The Settlement Website will also post the Preliminary Approval Order, the Complaint,

the Settlement Notice, the Settlement Agreement, and Plaintiff's applications for Attorneys'

Fees, Litigation Expenses, and a Case Contribution Award.  *See* Settlement Agreement §13.2,

Ex. B; *see also, e.g.*, *Allen v. Novant Health*, 2023 WL 7287506, at *2  (M.D.N.C. Nov. 6, 2023)

(approving similar notice plan);  *In re Mutual Funds Litig.*, 2010 WL 2307568 (D. Md. May 19,

2010) (same).

     The form of Notice and Notice Plan should be approved by the Court.

### 6.   The Settlement Class Should be Preliminarily Certified

     The Motion also requests that the Court maintain certification of the Settlement Class.

On July 12, 2022, the Court found that the requirements of Rule 23(a) and 23(b)(1) were

satisfied and certified materially the same class of participants and beneficiaries in the Plan

during the Class Period.  *See* ECF No. 64.  The Court has broad authority to alter an order

granting class certification.  Fed. R. of Civ. P. 23(c)(1)(C) (stating "[a]n order that grants or

denies class certification may be altered or amended before final judgment."); *see Amgen Inc. v.*

*Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 479, n. 9, 478 n. 10 (2013) (explaining courts

can amend or alter certification orders as appropriate).

     For the same reasons, the Court should preliminarily certify the Settlement Class to

facilitate effectuation the Settlement.  The Settlement Class meets all the same requirements of

Rule 23 for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

*See* Fed.  R. Civ. P. 23; *see also* Rubinow Decl. ¶¶ 24–26; *Clark*, 2019 WL 2588029, at *5

(certifying a settlement class where class certification was previously granted in an ERISA class

action); *In re Wachovia Corp. ERISA Litig.*, 2011 WL 13262040, at *3 (W.D.N.C. Oct. 24,

2011) (certifying ERISA class for settlement); *Sims*,  2019 WL 1995314, at *5 (certifying a

settlement class where class certification was previously granted); *Mutual Funds Litig.*, 2010 WL

2307568 (certifying ERISA class for settlement).  "Indeed, numerous courts have held that

'ERISA litigation [involving a breach of fiduciary duty] presents a paradigmatic example of a

(b)(1) class."  *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008)

(collecting cases).

## IV.    CONCLUSION

Plaintiff respectfully submits the Motion should be granted in its entirety.

Dated: January 19, 2024                            Respectfully Submitted,

> */s/ Alec J. Berin*
> James C. Shah
> Alec J. Berin
> MILLER SHAH LLP
> 1845 Walnut Street, Suite 806
> Philadelphia, PA 19103
> Telephone: (866) 540-5505
> Facsimile: (866) 300-7367
> Email: jcshah@millershah.com
>          ajberin@millershah.com
>
> James E. Miller
> Laurie Rubinow
> MILLER SHAH LLP
> 65 Main Street
> Chester, CT 06412
> Telephone: (866) 540-5505
> Facsimile: (866) 300-7367
> Email: jemiller@millershah.com
>          lrubinow@millershah.com
>
> Mark K. Gyandoh
> CAPOZZI ADLER, P.C.
> 312 Old Lancaster Road
> Merion Station, PA 19066
> Telephone: (610) 890-0200
> Facsimile: (717) 233-4103
> Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

Timothy F. Maloney
Jay P. Holland
Alyse L. Prawde
JOSEPH GREENWALD & LAAKE, PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770-1417
Telephone: (301) 220-2200
Facsimile: (301) 220-1214
Email: tmaloney@jgllaw.com
          jholland@jgllaw.com
          aprawdee@jgllaw.com

*Attorneys for Plaintiff, the Plan,
and the Settlement Class*