## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

In re MedStar ERISA Litigation

\*
\*
\*

CIV. NO. JKB-20-1984

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

Pending before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, and Case Contribution Awards. (ECF No. 126.) Plaintiff asks that the Court: (1) approve the Proposed Settlement (ECF No. 121-1); (2) maintain certification of the Settlement Class; (3) find that the Settlement Class was properly notified; (4) approve the Plan of Allocation; (5) award Class Counsel attorneys' fees of one third of the Settlement Fund and litigation expenses of $306,322.21; and (6) authorize a case contribution award of $15,000 to Plaintiff. (*Id.*) The Court held a Fairness Hearing on September 5, 2024. For the reasons set forth below, the Motion will be granted.

## I.   Factual and Procedural Background

### A.   Factual Background

Plaintiff Elsa Reed, as a participant of the MedStar Health, Inc. Retirement Savings Plan (the "Plan"), brought this Employee Retirement Income Security Act ("ERISA") case on behalf of similarly-situated participants and beneficiaries of the Plan. (*See* ECF No. 110.) She brought suit against Defendants MedStar Health, Inc. ("MedStar"), the Board of Directors of MedStar Health, Inc. ("Board"), and the MedStar Health, Inc. Retirement Savings Plan Committee ("Committee"

1

and collectively, "Defendants"). (*Id.*) In brief, she alleges that Defendants:

> breached their fiduciary duties to the Plan and . . . have: (1) failed to fully disclose the expenses and risk of the Plan's investment options to participants; (2) allowed unreasonable expenses to be charge[d] to Plan participants; and (3) selected, retained, and/or otherwise ratified high-cost and poorly-performing investments, instead of offering more prudent alternative investments when such prudent investments were readily available at the time that they were chosen for inclusion within the Plan and throughout the Class Period[.]

(*Id.* ¶ 6.)

### B. Procedural History

Plaintiff initially filed this action in July 2020. (ECF No. 1.)[1] Defendants filed a Motion to Dismiss (ECF No. 29), which the Court denied in February 2021. (ECF Nos. 36, 37.) The parties thereafter engaged in discovery. (*See* ECF No. 60.) In July 2022, the parties stipulated to—and the Court approved—the certification of a class for purposes of this litigation. (ECF Nos. 61, 64.) In August 2023, the Court granted Plaintiff leave to file a Second Amended Complaint, granted Defendant's Motion to Strike Plaintiff's Jury Demand, and resolved various issues relating to expert testimony. (ECF Nos. 108, 109.) Plaintiff filed the Second Amended Complaint on August 10, 2023. (ECF No. 110.) The Court then issued a Scheduling Order, scheduling a two-week bench trial set to begin on February 12, 2024. (ECF No. 112.)

On December 19, 2023, the parties informed the Court that they had reached a settlement in principle to resolve this action. (ECF No. 115.) On January 19, 2024, Plaintiff filed a Motion for Preliminary Approval of Class Settlement. (ECF Nos. 117–19.) The Court directed the parties to file a joint submission regarding the scope of the release contained in the proposed settlement agreement, given that the release was broader than permitted by the Fourth Circuit. (ECF No.

---

[1] Plaintiff Xania E. Watson also brought suit against Defendants. (Civ. No. JKB-20-2250, ECF No. 1.) On September 18, 2020, the Court consolidated the two actions under the instant case number, JKB-20-1984, and renamed the consolidated class action In re MedStar ERISA Litigation. (ECF No. 10.)

120.)  The parties revised the release to comport with Fourth Circuit precedent.  (ECF No. 121.)
The Court granted the Motion for Preliminary Approval of Class Settlement. (ECF No. 122.) The
Order granting the Motion certified the following Settlement Class, which was substantially the
same as the previously-certified class:

> All persons who participated in the Plan at any time during the Class Period (July
> 6, 2014 through the date the Preliminary Approval Order is entered by the Court),
> including any Beneficiary of a deceased person who participated in the Plan at any
> time during the Class Period, and any Alternate Payee of a person subject to a
> Qualified Domestic Relations Order who participated in the Plan at any time during
> the Class Period. Excluded from the Settlement Class are Defendants and their
> Beneficiaries.

(*Id.*)

On July 8, 2024, the Plaintiff filed the instant Motion for Final Approval of Class Action
Settlement and Attorneys' Fees, Expenses, and Case Contribution Awards. (ECF No. 126.) The
Court held a Fairness Hearing on September 5, 2024.

### C. Settlement Negotiations and Terms

Plaintiff explains that "[t]he Settlement was the result of extensive, arm's length
negotiations under the auspices of an experienced, neutral mediator and between counsel who were
fully informed of the strength of the Parties' claims and defenses." (ECF No. 126-1 at 12.) In
March 2023, "the Parties participated in a mediation with Robert A. Meyer, Esquire, of JAMS, a
well-known and highly respected mediator of complex class and other litigation" and "exchanged
information regarding their respective positions concerning the claims and defenses at issue in the
case." (*Id.*) The parties engaged in additional communications following the mediation, conferred
with experts to analyze Plaintiff's claims and the Plan's losses, and, in December 2023, ultimately
reached an agreement in principle. (*Id.*)

The Proposed Settlement provides that the Defendants or their insurers will make a

3

payment of $11,800,000.00 into a Qualified Settlement Fund (the "Gross Settlement Amount").

(ECF No. 121-1 ¶ 1.27.) The Proposed Settlement also provides that:

> "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Litigation Expenses paid to Class Counsel as authorized by the Court; (b) any Case Contribution Award as authorized by the Court; (c) all Administrative Expenses as authorized by the Court; (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors; and (e) any other Court-approved deductions.

(*Id.* ¶ 1.31.)

Payments to the Settlement Class are to be made pursuant to a Plan of Allocation. (*Id.* ¶ 5.3.) Pursuant to the Plan of Allocation, the Net Settlement Amount will be divided into an "Investments Settlement Amount" and an "Excessive Fees Settlement Amount," which will be 75% and 25% of the Net Settlement Amount, respectively. (*Id.* at 119-1 at 46–51.) Each Class Member will receive an Investments Score and an Excessive Fees Score, which will be calculated using a formula that accounts for year-end balances during the Class Period. (*Id.*)[2] These scores

---

[2] More specifically:

> The Investments Score shall be calculated by: (i) determining the sum of the yearend account balances in each of the [Challenged Funds] of each Current Participant and Former Participant during the Class Period, or, if a Beneficiary or Alternate Payee had a separate account in the Plan during the Class Period, by determining the sum of the year-end balance in each of the Challenged Funds of each such Beneficiary or Alternate Payee; and (ii) dividing the sum of each Current Participant's or Former Participant's, or, to the extent applicable, each Beneficiary's or Alternate Payee's, yearend account balances in each of the Challenged Funds during the Class Period by the total sum of year-end asset amounts in each of the Challenged Funds in Plan during the Class Period.

> The Excessive Fees Settlement Amount shall be calculated by: (i) determining the year-end account balances of each Current Participant and Former Participant during the Class Period, or, if a Beneficiary or Alternate Payee had a separate account in the Plan during the Class Period, by determining the year-end balance of each such Beneficiary or Alternate Payee; and (ii) dividing the sum of each Current Participant's or Former Participant's, or, to the extent applicable, each Beneficiary's or Alternate Payee's, yearend account balances during the Class Period by the total sum of year-end asset amounts in the Plan during the Class Period.

(ECF No. 119-1 at 47.)

will be used to determine the amount each Class Member receives as part of the settlement. (*Id.*) Class Members with active accounts will automatically get a payment pursuant to the Proposed Settlement, while those with closed accounts will be required to submit a claim form to receive a payment. (*Id.* ¶¶ 1.6, 1.7.) Plaintiff explains that "[a]s a result of the Plan of Allocation and Notice Plan, 29,413 members of the Settlement Class will automatically receive the benefit of the Settlement and an additional 3,162 members of the Settlement Class have submitted Former Participant Claim Forms to receive the benefit of the Settlement." (ECF No. 130.)

## II. Motion for Final Approval of Class Action Settlement

Because the Proposed Settlement meets the requirements under Federal Rule of Civil Procedure 23, the Court will approve it.

### A. Certification of the Settlement Class

The Court previously certified a class pursuant to a stipulation by the parties, finding that the prerequisites of Rules 23(a) and 23(b)(1) were satisfied. (*See* ECF No. 64.) The Court likewise approved the provisional certification of the Settlement Class (which was materially the same as the previously-certified class, other than minor changes to the class period end date and the addition of alternate payees). (ECF No. 122.) None of the circumstances warranting certification earlier in the life of this matter have changed, and the Court concludes that certification of the Settlement Class should be maintained through the entry of final judgment in this case.

### B. Notice

Federal Rule of Civil Procedure 23(e)(1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, Federal Rule of Civil Procedure 23(h)(1) states that "[n]otice of the motion [for an award of attorney fees] must be served on all parties and, for motions by class counsel, directed to class

5

members in a reasonable manner." Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). Further, to satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 157–58 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Court previously approved the proposed notice. (ECF No. 122.) Notice was provided in the manner approved by the Court, (*see* ECF No. 126-1 at 13), and that the notice was reasonably calculated to apprise absent class members of the action and provide them an opportunity to present their objections. *See In re Mut. Funds Inv. Litig.*, Civ. No. 04-15863, 2011 WL 1102999, at *1 (D. Md. Mar. 23, 2011) ("Notice need not be perfect, and all class members do not have to actually receive notice in order to satisfy the requirements of Rule 23 and due process."). Further, the notice "describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *McAdams*, 26 F.4th at 158 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)).

### C. Settlement Agreement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval," and Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is

6

'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).[3]

### 1. Fairness

In evaluating a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159).

The Proposed Settlement is fair. It was reached as a result of good-faith bargaining at arm's length without collusion, with the involvement of a third-party mediator and experienced counsel; there is nothing in the record to suggest otherwise. The posture of the case and the extent of discovery weigh in favor of finding that the Proposed Settlement is fair: the case was vigorously litigated by the parties, and settled only after extensive fact and expert discovery was completed, after various issues were litigated, and after a bench trial was set.

### 2. Adequacy

In assessing the adequacy of a proposed settlement, the Court considers: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong

---

[3] The Fourth Circuit has explained that—after Federal Rule of Civil Procedure 23(e)(2) was amended in 2018 to specify factors to assess the fairness, adequacy and reasonableness of a class action settlement—it has "continued to apply [its] own multifactor standards when reviewing settlements approved by district courts prior to the amendments to Rule 23(e)(2)." *Lumber Liquidators*, 952 F.3d at 484 n.8. The Fourth Circuit's "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *Id.*

defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019).

The Proposed Settlement is adequate.  The first two factors—the relative strength of Plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses the Plaintiffs are likely to encounter if the case goes to trial—weigh in favor of this finding.  As Plaintiff explains:

> [E]stablishing Defendants' liability would rely on the Court crediting Plaintiff's proffered evidence and the testimony of Plaintiff's fiduciary process experts that Defendants' procedures for monitoring the Plan's investments and fees were insufficient, and resulted in the Plan's retention of unsuitable investments and payment of excessive fees. Defendants have disclosed experts to counter Plaintiff's experts on each subject for which Plaintiff anticipated presenting expert testimony. There is a risk that the Court would accord more credibility to Defendants' experts and evidence, and since the burden of proof is on Plaintiff, there is a risk that the experts "cancel" each other out.

(ECF No. 118 at 20.)  Further, even if Plaintiff were able to sustain her burden with respect to liability at a bench trial, there is great risk in proving damages at trial.  In short, the Court agrees with Plaintiff's assessment that "meeting the high hurdle of proving liability and damage at trial is uncertain and risky." (ECF No. 126-1 at 19.)

The remaining factors—the anticipated duration and expense of additional litigation; Defendants' solvency; and the degree of opposition to the settlement—likewise weigh in favor of finding the Proposed Settlement adequate. The additional litigation required to try this case would have undoubtedly been extremely costly.  The bench trial was scheduled for two weeks and such

a trial, with the associated preparation and trial time, would have been expensive. Further, the risk of appeal—and its attendant costs—compounds the costliness of this case. Although Defendants' solvency is not contested, it does not weigh against approval of the proposed settlement. *See Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D.W. Va. 2002) ("The Court has no doubt [the defendant] would be able to satisfy any judgment entered against it. That consideration, however, is largely beside the point given the other factors weighing in favor of a negotiated resolution.").

Further, there have been no objections to the Proposed Settlement itself by Class Members (although, as discussed below, there has been an objection to the amount of attorneys' fees). *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable."). Moreover, an independent fiduciary reviewed the Proposed Settlement and concluded that it is "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." (ECF No. 131-1 at 12–13.) This further confirms the adequacy of the proposed settlement. *See In re Wachovia Corp. ERISA Litig.*, Civ. No. 3-9-262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("The independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non-opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy."); *Boyd*, 299 F.R.D. at 463 ("The Settlement Agreement was reviewed by an independent fiduciary, who endorsed the settlement, finding it fair given the difficulties Plaintiffs would have faced had litigation gone forward. This fact, combined with the fact that no objections have been filed, further suggests that the result achieved is a desirable one.").

### 3. Reasonableness

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for*

9

*Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). However, it has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Id.* (citing *Sharp Farms*, 917 F.3d at 303–04). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, [] it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.* The Court is not required to "decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel," rather "the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Id.* (quotations and citations omitted). The Fourth Circuit has "never required [] an estimate" of what the class members would have received had they prevailed at trial. *McAdams*, 26 F.4th at 160.

The Proposed Settlement is reasonable, taking into consideration the amount of recovery, the costs and risks of further litigation, and the recovery achieved in other ERISA class action litigation. *See, e.g.*, *Smith v. Krispy Kreme Doughnut Corp.*, 2019 WL 1995314 (M.D.N.C. Jan. 10, 2007), at *4 (settlement of $24 million for 72,632 settlement class members); *Clark v. Duke Univ.*, Civ. No. 16-1044, 2019 WL 2588029, at *4 (M.D.N.C. June 24, 2019) (settlement of $10,650,000 for a plan with 58,594 class members); (*see also* ECF No. 131-1 at 12–13 (independent fiduciary explaining that "[t]he $11,800,000 Settlement Amount is a fair and reasonable recovery given the results in numerous similar cases in the last several years, the defenses the Defendants would have asserted, the potential damages, the risks involved in proceeding to trial and the possibility of reversal on appeal of any favorable judgment.").)

### D. Proposed Plan of Allocation

"[T]he plan of allocation must also meet the standards of fairness, reasonableness, and

adequacy." *Boyd*, 299 F.R.D. at 461; *see also* Fed. R. Civ. P. 23(e)(2)(D) (requiring that "the proposal treat[] class members equitably relative to each other"). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd*, 299 F.R.D. at 461. Courts regularly approve settlements that provide for recovery to class members on a *pro rata* basis. *See, e.g., id.*

The Plan of Allocation provides that class members will be paid on a *pro rata* basis based on their balances invested in the Plan. This reasonably takes into account differences between Settlement Class members. Further, no class member has objected to the Plan of Allocation, and the independent fiduciary found the Plan of Allocation to be reasonable. (ECF No. 131-1 at 10.) Accordingly, the Court finds that the Plan of Allocation is reasonable.

### E. Conclusion

Based upon the foregoing, the Court concludes that the Proposed Settlement should be approved.

## III. Motion for Award of Attorneys' Fees, Expenses, and Case Contribution Award

Plaintiff also seeks approval of an award of attorneys' fees and expenses, and a case contribution award for the named Plaintiff. Plaintiff seeks attorneys' fees of one third of the Gross Settlement Amount (i.e., $3,933,333.33), expenses of $306,322.21, and a $15,000 award to the named Plaintiff. The Court has received an objection from Paul Littleton, who objects to the requested attorneys' fees. (ECF No. 129.)[4]

### A. Attorneys' Fees

In a class action, the court may award reasonable attorney's fees and nontaxable costs as

---

[4] Mr. Littleton did not appear at the Fairness Hearing. However, nothing in the Order setting in the Fairness Hearing required him to appear. (*See generally* ECF No. 122.) The Order required objectors to file their objections with the

authorized by law or by agreement. Fed. R. Civ. P. 23(h). The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams*, 26 F.4th at 162. "The Fourth Circuit has neither announced a preferred method for determining the reasonableness of attorneys' fees in common fund class actions nor identified factors for district courts to apply when using the percentage method." *Id.* (quoting *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009)). "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check." *See Donaldson v. Primary Residential Mortg., Inc.*, Civ. No. ELH-19-1175, 2021 WL 2187013, at *8 (D. Md. May 28, 2021); *see Kruger v. Novant Health, Inc.*, Civ. No. 14-0208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016) (explaining that "[c]ourts within the Fourth Circuit have cautioned against the lodestar approach in determining attorneys' fees in common fund cases" and applying the lodestar analysis as a cross-check only). The Court will therefore determine whether the requested amount is reasonable pursuant to the percentage-of-recovery method and confirm the reasonableness with a lodestar cross-check.

With respect to the percentage of recovery, district courts in this circuit have analyzed the following seven factors in determining whether a requested percentage is reasonable: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and

---

Court; provided that objectors who filed timely written objections "*may* [ ] participate in the Fairness Hearing"; and required those objectors who wished to participate in the Hearing to file a notice of intention to participate. (*Id.* at 10–11 (emphasis added).)

(7) public policy[.]" *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013). Courts need not apply the factors in a "formulaic way" and may weigh the factors as appropriate for a particular case. *Id.*

**Results obtained.** The Court finds that the results obtained for the Class are very good, given the likelihood of recovery at a bench trial and the Gross Settlement Amount secured by Class Counsel.   Further, approximately 48,000 class members received notice of the Proposed Settlement, and the Court has received no objections regarding the Proposed Settlement itself. This also indicates that the results achieved by Class Counsel are satisfactory to the Class.

**Quality, skill, and efficiency of the attorneys.** The Court finds that the quality, skill, and efficiency of the attorneys also merits the approval of the requested fee amount. "It is well established that complex ERISA litigation, such as this, requires special expertise and class counsel of the highest caliber." *Kelly v. Johns Hopkins Univ.*, Civ. No. 16-2835-GLR, 2020 WL 434473, at *4 (D. Md. Jan. 28, 2020) (citation and quotations omitted). Class Counsel are experienced and skilled ERISA class action litigators, (*see* ECF No. 119 at 2–3), and have demonstrated their quality and skill throughout the pendency of this litigation.   For instance, Class Counsel successfully avoided dismissal early in the life of this case. (*See* ECF Nos. 36, 37.) Further, Class Counsel were efficient.  For instance, the parties stipulated as to the issue of class certification, and did not engage in protracted litigation as to that issue. (*See* ECF Nos. 61, 64.) Class Counsel faced off against the very experienced firm of Skadden, Arps, Slate, Meagher & Flom LLP and, as Counsel explains: "Defendants and their counsel spared no effort in advancing a thorough and aggressive defense." (ECF No. 126-2 at 7.)

**Risk of nonpayment.** Class Counsel took on significant risk in undertaking representation in this matter on a contingency basis and in advancing litigation expenses. "While every attorney

undertaking a class action bears substantial risks, those risks are especially pronounced in ERISA litigation of this nature." *Boyd*, 299 F.R.D. at 464. This factor likewise weighs in favor of approval of the requested fee amount.

**Objections.** As Plaintiff reports, the Settlement Administrator provided notice of the Proposed Settlement to 48,000 Class Members. (ECF No. 126-1 at 21.) The Court has received one objection, from Paul Littleton. (*See* ECF No. 129.) Mr. Littleton represents that he is "a former participant of the MedStar Health, Inc. Retirement Savings Plan." (*Id.*) He objects to the requested attorneys' fees, explaining that the request amount is "excessive and unreasonable and severely reduce[s] the Net Settlement Amount available for distribution to the Class Members." (*Id.*) He asks that the Court limit the fees to no more than 10% of the Gross Settlement Amount. (*Id.*) The Court agrees with Mr. Littleton that the requested attorneys' fees do of course reduce the amount available for distribution to the Class Members. However, this is the nature of attorneys' fees in a common fund case. Indeed, any amount of attorneys' fees will necessarily reduce the amount available for distribution. Mr. Littleton does not explain why he believes that the requested amount is excessive and unreasonable as compared to the results obtained or any other relevant factors.[5] And, as discussed in more detail herein, the Court does not find that the requested amount is unreasonable. In short, the absence of any other objectors, alongside the other factors discussed herein, outweigh the concerns raised by the lone objector.

**Awards in similar cases.** Further, the requested amount is in line with fee awards in other ERISA litigation. *See Kelly*, 2020 WL 434473, at *3 (explaining that "[c]ontingent fees of up to one-third are common in this circuit" and that "[i]n similar ERISA excessive fee cases, and in

---

[5] Class Counsel also reports that they "reached out to Mr. Littleton, the sole objector, on two occasions in an effort to invite him to share any concerns about the Settlement and related applications and address any outstanding questions or concerns, and Mr. Littleton did not respond to Class Counsel's messages." (ECF No. 130 at 6.)

particular those brought by Class Counsel, district courts have consistently recognized that a one-third fee is the market rate" and collecting cases); *see also Kruger*, 2016 WL 6769066, at *2 (explaining that courts have found that a one-third fee is appropriate in complex ERISA litigation and collecting cases).

**Complexity and duration of the case.**  The complexity and duration of this case also merit approval of the requested attorneys' fees.  "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery."  *Boyd*, 299 F.R.D. at 465 (citation omitted).  Here, not only is ERISA litigation notoriously complex, this case has been ongoing since July 2020, has seen significant motions practice, and settled only after discovery had occurred and trial had been set.  (*See, e.g.*, ECF No. 126-2 at 7 (Class Counsel explaining that "Defendants and their counsel spared no effort in advancing a thorough and aggressive defense. Defendants' counsel vigorously defended their clients, filed multiple dispositive and procedural motions, retained experts on issues of liability and damages").)  Plaintiff explains that "Class Counsel and their professionals have spent, in the aggregate, over 6,322 hours in the prosecution of this case."  (ECF No. 126-1 at 15.)

**Public policy.**  "[I]n assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that vindicate rights that might otherwise go unprotected, and perpetuating the public perception that class action plaintiffs' lawyers are overcompensated for the work that they do."  *Boyd*, 299 F.R.D. at 466.  However, as Plaintiff reports, Class Counsel billing records reflect that their representation amounts to $4,082,394.50 in legal fees.  (ECF No. 126-1 at 15.)  Therefore, this is not a case where the percentage-of-recovery method results in an outsized

attorneys' fee award as compared to the fees Class Counsel may have collected from a paying client. And public policy "supports compensating attorneys for their efforts in prosecuting cases to remedy large-scale problems that would not be financially practicable to litigate on an individual basis." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, Civ. No. JKB-16-3025, 2019 WL 3183651, at \*7 (D. Md. July 15, 2019).

**Lodestar cross-check.** "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Singleton*, 976 F. Supp. 2d at 688. Class Counsel reports that they have "spent a total of 6,322 hours litigating this matter and their lodestar is \$4,082,394.50." (ECF No. 126-2 at 5.) They explain that the requested fee amount therefore represents a 0.96 multiplier (i.e., the requested fee award of \$3,933,333.33 represents 0.96 times the actual incurred fee of \$4,082,394.50 that counsel could have charged a paying client). (*Id.*)

Plaintiff has not provided a breakdown of the hours spent by litigation phase, and therefore has not complied with Appendix B of the Court's Local Rules. However, Plaintiff will not be required to correct this deficiency, as "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case" and the Court is not required to "exhaustively scrutinize" the hours documented by Class Counsel when the Court is using the lodestar method as a cross-check. *See Kelly*, 2020 WL 434473, at \*6 (citations and quotations omitted). Further, Plaintiff did provide a table detailing the hours spent by each attorney and staff and each individual's hourly rates. (ECF No. 126-2 at 10.)

Class Counsel calculated the \$4,082,394.50 figure using its hourly rates (as opposed to the hourly rates provided in the Appendix B of the Local Rules). This is appropriate, given that "courts have repeatedly recognized [that] complex ERISA class action litigation, such as this, involves a

16

national market" and that "the relevant market rate for [such cases] is a nationwide market rate." *Kelly*, 2020 WL 434473, at *6 (approving the following rates, which are comparable to those in this case: "for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2–4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour"); *see also Sims v. BB&T Corp.*, Civ. No. 1:15-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("[A] national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions.").

The requested fee amount is reasonable considering lodestar cross-check.  As counsel reports, its requested fee award represents a 0.96 negative multiplier.  Courts in this Circuit routinely approve lodestar multipliers that are much higher.  *Kelly*, 2020 WL 434473, at *7 ("The requested fee would result in a lodestar multiplier of 2.45—well within the range routinely approved in this Circuit."); *Jones*, 601 F. Supp. 2d at 766 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Kruger*, 2016 WL 6769066, at *5 (collecting cases reflecting lodestar multipliers of 2.5 to 8.9).  Accordingly, the Court will approve the request for $3,933,333.33 in attorneys' fees.

### B. Expenses

Under Federal Rule of Civil Procedure 23(h), the Court may also award reasonable costs. Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).  "The prevailing view is that expenses are awarded in addition to the fee percentage." *Kelly*, 2020 WL 434473, at *7 (citations and quotations omitted).  Expenses may include court costs, transcripts, travel, contractual

personnel, photocopying, postal fees, telephone costs, and expert witness fees. *Id*; *see also Boyd*, 299 F.R.D. at 468 (approving expense request that included "filing fees, expert and mediation fees, travel costs, computer research, copies, and other miscellaneous costs" and concluding that the expenses were "reasonable and typical").

Here, Class Counsel requests $306,322.21. (ECF No. 126-1 at 32–33.) Counsel explains that "[t]hese expenses include expert witness fees for three highly specialized experts, costs for multiple depositions, filing and mailing services, and other litigation-related expenses." (*Id.*) Class Counsel provides a breakdown of the expenses. (ECF No. 126-2 at 11.) The Court concludes that the expenses are appropriate for a case such as this. The expenses for "Experts/Investigators" represent the vast majority of the expense request ($214,816 of the total $306,322.21 request). (*Id.*) The next largest expense was "Transcripts/Court Reporting" followed by "Internal Copying and Printing." (*Id.*)

The fee request is reasonable. The expenses relating to experts—which represent the majority of the requested expenses—are "reasonable in light of the reliance other district courts in similar ERISA excessive fee litigation have placed on expert testimony and the complex nature of ERISA litigation." *Clark*, 2019 WL 2579201, at *4 (finding $822,212 in total fees reasonable where "[a]pproximately 80% of these expenses are related to plaintiffs' expert witnesses").

### C. Service Awards

Plaintiff seeks a case contribution award of $15,000. (ECF No. 126-1 at 33.) "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry*, 807 F.3d at 613 (internal quotations and citations omitted). "To determine whether an incentive payment is warranted, the

18

court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Decohen v. Abbasi*, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Counsel reports that "Plaintiff provided documents and communicated with Class Counsel which led to the development of the fact and legal claims for the complaint, and she assisted with the drafting of the initial complaint" and that she "also spent substantial time and effort actively participating in all phases of the litigation after it was filed." (ECF No. 126-2 at 8.)  She "participated in the discovery process by gathering and producing documents, answering document requests and interrogatories, assisting with document requests, and reviewing key documents relating to the substantive claims"; "prepared and sat for a deposition and was prepared to attend the trial and testify if called as a witness"; "participated in regular conference calls"; and "participated in the settlement negotiations and related strategy discussions through the mediation and follow-up discussions." (*Id.* at 9.)  This reflects that Plaintiff took significant action to protect the interests of the Class, which justifies the approval of the $15,000 award.

Further, the requested award is in line with—and indeed more modest than—that obtained in other ERISA and 401(k) litigation in this Circuit. *See, e.g., Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (explaining that "[a] substantial incentive award is appropriate in this complex ERISA case given the benefits accruing to the entire class in part resulting from [the class representative's] efforts" and approving a $15,000 award); *Kelly*, 2020 WL 434473, at *7–8 (approving incentive awards of $20,000 each to eight class representatives in an ERISA class action); *Skochin v. Genworth Fin., Inc.*, Civ. No. 19-0049, 2020 WL 6536140, at *11 (E.D. Va. Nov. 5, 2020) (approving $25,000 service award in light of "the time and effort expended by

Named Plaintiffs and in perspective of the fact that their efforts helped to secure a settlement that is highly beneficial to the class"); *Clark*, 2019 WL 2579201, at *5 (approving awards of $25,000 and $30,000 for named plaintiffs). The Court will therefore approve the requested contribution award to Plaintiff.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, and Case Contribution Awards (ECF No. 126) will be granted and the case will be dismissed. A separate Order follows.

DATED this 5 day of September, 2024.

BY THE COURT:

James K. Bredar
United States District Judge

20